IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| JOHN PARIS, as Administrator for the Estate of VICTORIA L. PARIS, and in his personal capacity, | )<br>)<br>) |
| | ) Case No. 2:21-cv-02149 |
| Plaintiff, | )<br>) District Judge James E. Shadid |
| and | )<br>) Magistrate Judge Jonathan E. Hawley |
| WEXFORD HEALTH SOURCES, INC., DR. RONALD SCHAEFER, DR. RALPH GAUEN, DR. MICHAEL BREWER, DR. GEORGE DUNCAN, DR. VIDYA MORISETTY, NURSE EDITHA STOKES, NURSE JOANN BENWAY, NURSE SHANNON FUCHS, NURSE BRENDA CRIST, NURSE LISA SMITH, NURSE HEATHER SPENGLER, NURSE RHONDA BEARD, and, PHYSICIAN ASSISTANT JANE DOE, in their individual capacities, | )<br>**ORAL ARGUMENT REQUESTED** |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

Plaintiff John Paris ("Mr. Paris"), as Administrator for the Estate of Victoria L. Paris ("Ms. Paris") and in his personal capacity, submits this memorandum of law opposing the partial motion to dismiss the Complaint filed by Defendants Wexford Health Sources, Inc. ("Wexford"), Dr. Ronald Schaefer, Dr. Ralph Gauen, Dr. Michael Brewer, Dr. George Duncan, and Dr. Vidya Morisetty ("Wexford Physicians"; together with Wexford, collectively, the "Wexford Defendants"), and joined in part by Defendants Nurse Editha Stokes, Nurse Joann Benway, Nurse Shannon Fuchs, Nurse Brenda Crist, Nurse Lisa Smith, Nurse Heather Spengler, and Nurse Rhonda Beard (the "IDOC Defendants"; together with Wexford Physicians, collectively, the

1

"Decatur Medical Staff"; together with the Wexford Defendants, collectively, "Defendants"), Dkt. Nos. 44 and 45.

## INTRODUCTION

Mr. Paris brings this action under the Constitution of the United States and Illinois law to vindicate Defendants' egregious violations of his rights and the rights of his late wife, Victoria L. Paris, who passed away after receiving inadequate medical care while incarcerated. While under the medical care of Defendants at Decatur Correctional Center, Ms. Paris suffered in pain and ultimately died from late-diagnosed bladder cancer after months of Defendants' delays and failures to provide Ms. Paris with the requisite care and information required under the law. The Complaint alleges violations of Ms. Paris's Eighth Amendment right to medical care against the Decatur Medical Staff (Count I) and Wexford (Count II); violations of Ms. Paris's Fourteenth Amendment right to medical information against the Decatur Medical Staff (Count III) and Wexford (Count IV); medical malpractice against the Decatur Medical Staff (Count V) and Wexford via respondeat superior (Count VI); institutional negligence against Wexford (Count VII); wrongful death against the Decatur Medical Staff (Count VIII) and Wexford via respondeat superior (Count IX); wrongful death against Wexford (Count X); loss of consortium against the Decatur Medical Staff (Count XI) and Wexford via respondeat superior (Count XII); and loss of consortium against Wexford (Count XIII). Defendants move to dismiss Count III against only the Wexford Physicians,[1] Count V,[2] and Count VII. For the reasons below, Defendants' motion to dismiss should be denied.[3]

---

[1] The IDOC Defendants did not move to dismiss Count III, and Wexford did not move to dismiss Count IV of the Complaint, which alleges a violation of Ms. Paris's Fourteenth Amendment right to medical information against Wexford. *See* Dkts. 44, 45.
[2] The IDOC Defendants moved to join the Wexford Physicians' motion to dismiss Count V. Dkt. 45.
[3] Because IDOC Defendants did not file their own motion to dismiss and only moved to join in part the Wexford Defendants' motion to dismiss asserting no new arguments, Plaintiff files this

Count III sufficiently states a claim for violation of Ms. Paris's Fourteenth Amendment right to medical information. Whether the Wexford Physicians were to personally perform the surgery is irrelevant, and the Complaint alleges sufficient facts establishing that the Wexford Physicians acted with deliberate indifference to Ms. Paris's right to medical information. In addition, Count III is timely and not barred by the statute of limitations because the statute of limitations did not begin to run until, at the earliest, Ms. Paris was diagnosed with advanced cancer in October 2019.

Defendants' frivolous argument concerning Counts V and VII is directly contrary to controlling Seventh Circuit precedent, which Defendants fail to cite and provides that dismissal is not appropriate where a plaintiff does not attach the physician's report to a complaint filed in federal court based on an Illinois medical malpractice claim. *Young v. U.S.*, 942 F.3d 349, 351 (7th Cir. 2019), *cert. denied*, 141 S. Ct. 295 (2020).

Accordingly, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss. Dkt. 44; Dkt. 45.

**FACTUAL BACKGROUND**

Ms. Paris was a 14-year bladder cancer survivor who passed away in March 2020, at the age of 61, due to stage 4 bladder cancer. Compl. ¶ 1. In 2005, prior to her incarceration, treatment of Ms. Paris's first bout with bladder cancer was successful and the cancer went into remission. *Id.* ¶ 26. Ms. Paris's physicians at the time advised her that she would need surveillance testing every six months to one year for the rest of her life to ensure any potential return of her cancer was caught early and properly treated. *Id.* Despite the challenges of receiving specialized medical care

---

opposition in response to all Defendants' arguments and requests the Court deny the motion to dismiss as applicable to all Defendants.

while incarcerated, Ms. Paris was diligent about seeking the surveillance testing she needed and was prescribed. *Id.* ¶ 29. In 2009, Ms. Paris wrote to her urologist that her prison doctors were not following his recommendation that Ms. Paris see an urologist every six months. *Id.* In 2018, Ms. Paris filed a grievance against Defendant Dr. Schaefer after he stated he would not send Ms. Paris to an urologist for the remainder of her incarceration. *Id.*

In November 2018, surveillance testing caught potential signs of Ms. Paris's cancer returning. *Id.* ¶ 31. It was not until over four months later that Ms. Paris saw an outside specialist for a cystoscopy, ureteroscopy, and biopsies of her bladder and ureter. *Id.* ¶ 38. The urologist, Dr. Roszhart, was unable to complete the procedure or collect any biopsies because he was unable to locate the left ureteral orifice. *Id.* Dr. Roszhart instructed that Ms. Paris should receive a second opinion from another urologist and noted that Ms. Paris may need a stent placed to gain access into the left ureter; he further instructed Ms. Paris to receive a second opinion to confirm if the surgery was necessary. *Id.*

Defendants disregarded the specialist's instructions and instead Defendant Dr. Brewer ordered a nephrostomy tube surgery. *Id.* ¶ 39. Defendants never informed Ms. Paris of the crucial information she would need to decide whether or not to accept the nephrostomy tube surgery, a treatment plan at odds with what her urologist had recommended. *Id.* ¶¶ 38–43. Defendant Nurse Benway met with Ms. Paris on April 23, 2019, and explained the basic process for the surgery but did not explain the potential benefits of the surgery or the potential consequences of refusing it. *Id.* ¶ 41. Dr. Brewer did not explain to Ms. Paris the potential benefits of the surgery or the potential consequences of refusing it. *Id.* ¶ 40. Ms. Paris, without the crucial information about the risks and benefits of the surgery, declined the nephrostomy tube surgery because Dr. Roszhart

4

had recommended she receive a second opinion—which, at that time, she had still not received. *Id.* ¶¶ 40–43.

For the next six months, Ms. Paris repeatedly requested that Defendants refer her to the second opinion that Dr. Roszhart had ordered. *Id.* ¶¶ 44–46. Defendants repeatedly told Ms. Paris that because she had refused the nephrostomy tube surgery, there was nothing that Defendants could do. *Id.* ¶¶ 45–46. Over the next six months, Ms. Paris saw Defendants Dr. Brewer, Dr. Duncan, and Dr. Morisetty for treatment of her symptoms of "chronically bloody" urine, a burning sensation when urinating, and incontinence. *Id.* ¶¶ 47–54. Despite Ms. Paris's repeated requests for a second opinion and consistent display of concerning and overt symptoms, Defendants still did not refer Ms. Paris to a second opinion, did not inform Ms. Paris how the nephrostomy tube surgery could be essential to detecting any potential return of her cancer, and did not order any additional surveillance testing. *Id.* ¶¶ 44–54.

Defendants were responsible for Ms. Paris's medical care, *id.* ¶¶ 27–28, and approving Ms. Paris for specialized care, *id.* ¶ 35 n.3. Defendants' failure to provide Ms. Paris with information necessary to make an informed and educated decision as to her treatment is consistent with Wexford's practice and custom of not informing patients of important details of their treatment. *Id.* ¶¶ 95–100. Defendants' inaction following Ms. Paris's refusal of the surgery is also consistent with Wexford's custom of discouraging referrals for specialists and diagnostic testing. *Id.* ¶¶ 66–94.

## STANDARD OF REVIEW

When considering a motion to dismiss, the Court takes all well-pled allegations of the complaint as true and views them in the light most favorable to the plaintiff. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (citing *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010)).

The purpose of a motion to dismiss is it to test the sufficiency of the complaint, not to decide the merits. *Hosea v. Slaughter*, 669 F. App'x 791, 792 (7th Cir. 2016) (quoting *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)). A complaint need only contain a short and plain statement of the claim showing that the plaintiff is entitled to relief to survive a motion to dismiss. *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1098 (7th Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). The complaint must give the defendant fair notice of what the claim is and the grounds it rests upon. *Id.* at 1098–99 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plaintiff's responsibility is to state a claim for relief that is plausible on its face. *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cty.*, 804 F.3d 826, 832–33 (7th Cir. 2015) (citing *Twombly*, 550 U.S. at 570 *and Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This standard calls only for enough facts to raise the reasonable expectation that discovery will reveal evidence supporting the allegations. *Id.*

## ARGUMENT

**I.      The Complaint Sufficiently States A Claim Against The Wexford Physicians For A Fourteenth Amendment Due Process Violation Regarding A Right To Informed Consent And Is Not Time Barred. (Count III)**

Under the Fourteenth Amendment, prisoners have a right to the "information necessary to make an informed decision" about their treatment, including "crucial information about the risks and benefits of a procedure." *Knight v. Grossman*, 942 F.3d 336, 342 (7th Cir. 2019), *cert. denied*, 141 S. Ct. 233 (2020). To establish that the right to informed consent was violated, a plaintiff must show that: 1) the plaintiff was deprived of information that a reasonable patient would deem necessary to make an informed decision about her medical treatment; 2) the defendant acted with

6

deliberate indifference to the plaintiff's right to informed consent; and 3) if the plaintiff had received the information, she would have refused the treatment. *Id.* at 344.

The Wexford Physicians challenge the sufficiency of Mr. Paris's Fourteenth Amendment allegations in only two respects. First, they argue that they did not owe Ms. Paris a duty to provide her with medical information because they were not personally involved in performing the medical procedure. Dkt. 44 at 3. Second, they argue that Mr. Paris failed to adequately plead that Defendants acted with deliberate indifference. *Id.* at 4. The Wexford Physicians also assert, in the alternative, that the Fourteenth Amendment claim is barred by the statute of limitations. *Id.* at 4-5. Each of these arguments lacks merit.

> A. <u>The Complaint Sufficiently Alleges That The Wexford Physicians Had A Duty To Provide Ms. Paris With Information Necessary To Make An Informed Decision.</u>

Defendants attempt to absolve themselves of any responsibility for their violation of Ms. Paris's Fourteenth Amendment right to medical information by arguing that they "were not personally involved in performing any medical procedure on Ms. Paris for which they then had a duty to provide her with medical information." Dkt. 44 at 3. They claim that they "simply acted as the referring provider, not the treating provider" and were therefore not personally responsible for the deprivation of Ms. Paris's right to informed consent. *Id.*

Whether the Wexford Physicians were slated to perform the surgery *themselves* is irrelevant to whether they had a duty to provide information sufficient to satisfy the informed consent standard. The Wexford Physicians had such a duty because they were responsible for Ms. Paris's medical care, Compl. ¶¶ 11–15, they made the treatment decision to order the medical procedure, *id.* ¶ 39, and they also prevented Ms. Paris from seeing an outside specialist for months, *id.* ¶ 44–54. *Cf. Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016), as amended (Aug. 25, 2016)

7

(identifying plausible Eighth Amendment claim of deliberate indifference based on physician's "treatment decision").

The Wexford Physicians were responsible for the medical care of all inmates at Decatur Correctional Center, including Ms. Paris. *See* Compl. ¶¶ 11–15. In addition, it was the Wexford Physicians, not the outside specialist, who made the treatment decision to schedule a nephrostomy tube surgery as the course of treatment for Ms. Paris's overt symptoms of bloody urine, painful urination, and incontinence. Compl. ¶¶ 38–39. Defendant Dr. Brewer ordered the surgery notwithstanding the outside specialist Dr. Roszhart's instruction to first provide Ms. Paris with a referral to another specialist. *Id.*; *cf. Arnett*, 658 F.3d at 753 (allegations of refusal to follow the advice of a specialist can state Eighth Amendment deliberate indifference claim).

The Wexford Physicians also prevented Ms. Paris from receiving the vital medical information regarding the surgery by failing to schedule an appointment with an outside specialist and failing to provide the relevant information to Ms. Paris for months, even though Ms. Paris repeatedly requested that Defendants provide her with the second opinion her urologist had ordered. Compl. ¶¶ 44–46, 49–50, 52–53. Ms. Paris saw Defendants Dr. Brewer, Dr. Duncan, and Dr. Morisetty for treatment of her symptoms of "chronically bloody" urine, a burning sensation when urinating, and incontinence. *Id.* ¶¶ 47–54. Despite Ms. Paris's repeated requests for a second opinion and consistent display of concerning and overt symptoms, Defendants still did not refer Ms. Paris to a second opinion, did not inform Ms. Paris how the nephrostomy tube surgery could be essential to detecting any potential return of her cancer, and did not order any additional surveillance testing. *Id.* ¶¶ 44–54; *cf. Arnett*, 658 F.3d at 753 (plaintiff stated Eighth Amendment deliberate indifference claim where defendant physician "did nothing" despite being aware of plaintiff's condition, need for treatment, and pleas for treatment ordered by specialist).

The Wexford Physicians provide no case support for their assertion that they did not owe Ms. Paris a duty of informed consent, where the Wexford Physicians were responsible for Ms. Paris's medical care, disregarded a specialist's recommendation, made the treatment decision to order a procedure, and prevented Ms. Paris from seeing a specialist for months despite her repeated requests. Dkt. 44 at 3. Where, as here, Plaintiff sufficiently alleges each element of a Fourteenth Amendment violation of the right to informed consent as to each of the defendants, the defendants may not escape liability merely because they would not have performed the surgery. *See Knight*, 942 F.3d at 342–44. As detailed in the Complaint, each of the Wexford Physicians acted with deliberate indifference to Ms. Paris's right to informed consent by failing to provide her with information about the risks and benefits of the surgery and preventing her from seeing an outside specialist. *See infra* Section I.A.

> B. <u>The Complaint Alleges Facts Sufficient To Show That The Wexford Physicians Acted With Deliberate Indifference By Withholding Information They Knew Ms. Paris Would Consider Essential.</u>

The Wexford Physicians argue that the Complaint fails to allege sufficient facts to support that Defendants acted with deliberate indifference because they provided *some* information about the basic process of the surgery to Ms. Paris. Dkt. 44 at 4. But a physician is deliberately indifferent to a patient's right to informed consent if the physician subjectively knows "that the patient would want to know the medical information being withheld in order to decide whether to refuse the treatment." *Knight*, 942 F.3d at 343. The Complaint sufficiently alleges that Defendants withheld information that they knew Ms. Paris would consider crucial in deciding whether to refuse the nephrostomy tube surgery.

Ms. Paris took her cancer surveillance testing seriously and was diligent in advocating that she receive the testing necessary to detect any potential return of her cancer. Compl. ¶¶ 28–29. Ms. Paris even filed a grievance against Defendant Dr. Schaefer when he stated he would no longer

9

send Ms. Paris to see her urologist for surveillance testing. *Id.* ¶ 29. After Dr. Roszhart informed her she would need a second opinion, *id.* ¶ 38, Ms. Paris repeatedly requested that Defendants follow Dr. Roszhart's instructions and refer her for a second opinion. *Id.* ¶¶ 44–46. The nephrostomy tube surgery could have enabled an urologist to complete the biopsies Dr. Roszhart was unable to perform. *Id.* ¶ 40. The surgery may have been essential to detecting any potential return of Ms. Paris's cancer. *Id.* ¶ 43. Given the seriousness with which Ms. Paris approached her surveillance testing and her repeated requests to Defendants for a second opinion, Defendants "subjectively kn[ew]" that Ms. Paris "would want to know the medical information [they] withheld in order to decide whether to refuse treatment," and thus were deliberately indifferent by failing to provide the information to Ms. Paris. *See Knight*, 942 F.3d at 343.

The allegations in the Complaint are more than sufficient to satisfy the pleading standard on a motion to dismiss. *See Dysart v. Madigan*, No. 05-2156, 2005 WL 8162707, at *4 (C.D. Ill. Nov. 30, 2005), *report and recommendation adopted*, No. 05-2156, 2005 WL 8162708 (C.D. Ill. Dec. 19, 2005) (denying motion to dismiss because plaintiff need not prove allegations at motion to dismiss stage and the court "can infer that [the defendant] was aware of the substantial risk of serious injury"); *Est. of Morris v. Jeffreys*, No. 3:20-CV-50320, 2021 WL 3187699, at *3 (N.D. Ill. July 28, 2021) (denying motion to dismiss deliberate indifference claim and noting that summary judgment motions have "the benefit of a fully developed factual record" while arguments about subjective knowledge raised in a motion to dismiss are "an entirely different analysis").

      C. <u>Plaintiff's Fourteenth Amendment Claim Against The Wexford Physicians Is Timely.</u>

The Wexford Physicians assert that Plaintiff's Fourteenth Amendment claim accrued when Ms. Paris refused the nephrostomy tube surgery in April 2019. This is wrong. The claim did not

10

accrue until, at the earliest, Ms. Paris was diagnosed with advanced cancer in the Fall of 2019.

Actions brought under § 1983 are subject to the statute of limitations and tolling rules applicable under state law, which in Illinois is two years from the date the claim accrues. *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 517 (7th Cir. 2019). Federal law controls when the statute of limitations period begins to accrue. *Id.* For medical errors, the federal rule is that a claim accrues when a person knows his injury and its cause. *Devbrow v. Kalu*, 705 F.3d 765, 768 (7th Cir. 2013).

Mr. Paris's claim based on the Fourteenth Amendment right to medical information began to accrue when Ms. Paris knew that Defendants had failed to provide her with the necessary information regarding the nephrostomy tube surgery. *See Walton v. Arrendondo*, No. 2:14-CV-00626-KI, 2016 WL 247567, at *3 (D. Or. Jan. 20, 2016) (citing *TwoRivers v. Lewis*, 174 F.3d 987, 992 (9th Cir. 1999)) ("The question, then, is when [the plaintiff] knew or had reason to know [the physician-defendant] had given him incomplete information."). It is nonsensical that Ms. Paris would have known that Defendants failed to provide her with crucial medical information before she was aware of the effects of that failure and diagnosed with advanced cancer in October 2019. Compl. ¶¶ 60–63. Therefore, Ms. Paris's claim for a violation of her right to medical information began to accrue in October 2019 at the earliest, and this action is timely because it was filed within two years of the accrual date.

Moreover, any dispute as to when Ms. Paris *knew* or *should have known* of the effects of Defendants' failure to provide necessary medical information is not resolved at the motion to dismiss stage; Defendants' affirmative defense on statute of limitations grounds is not suited for this preliminary stage of litigation. *See Payton v. Williams*, No. 14-CV-2566, 2017 WL 5971996,

11

at *7 (N.D. Ill. Dec. 1, 2017) (limitations defenses are not often resolved on a motion to dismiss and are only appropriate where the complaint itself establishes the suit is tardy).

## II. Illinois Medical Malpractice Claims Brought In Federal Court Do Not Require A Physician's Report Be Attached To The Complaint. (Counts V and VII)

Defendants wrongly assert that Counts V and VII should be dismissed because Mr. Paris failed to attach a physician's report. Dkt. 44 at 5; Dkt. 45 at 2. Defendants misstate the law and fail to cite controlling Seventh Circuit precedent. The Seventh Circuit has explicitly held that "a complaint in federal court cannot properly be dismissed because it lacks an affidavit and report under § 5/2-622." *Young*, 942 F.3d at 351. Plaintiff is required to provide the physician's affidavit and report only when Defendants move for summary judgment. *Id.* at 352.

Defendants' cases pre-date *Young,* Dkt. 44 at 5, and also noted the lack of clear Seventh Circuit precedent at the time on whether attaching a physician's report to the complaint was a procedural or substantive requirement. *See Warren v. Dart*, No. 09-CV-3512, 2010 WL 4883923, at *10 (N.D. Ill. Nov. 24, 2010); *Chapman v. Chandra*, No. 06-CV-0651MJR, 2007 WL 1655799, at *3 (S.D. Ill. June 5, 2007). The Seventh Circuit has now clearly held that it is a procedural requirement that gives way to the Federal Rules of Civil Procedure. *Young*, 942 F.3d at 351–52.

Thus, Mr. Paris's Complaint as to Counts V and VII is not deficient and no additional information is required from Mr. Paris at this time.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion to dismiss Counts III, V, and VII. Mr. Paris requests oral argument on Defendants' motion to the extent it would assist the Court in the resolution of the motion to dismiss.

Respectfully Submitted,

John Paris, as Administrator of the Estate of Victoria L. Paris, and in his personal capacity

By:  */s/ Michael A. Doornweerd*

Michael A. Doornweerd
Ali I. Alsarraf
Lina R. Powell
Michael B. Kang
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Telephone: + 1 312 222 9350
Facsimile: +1 312 527 0484
mdoornweerd@jenner.com
aalsarraf@jenner.com
linapowell@jenner.com
mkang@jenner.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I, Michael A. Doornweerd, hereby certify that on October 1, 2021, I caused copies of the foregoing document to be filed with the Clerk for the District Court for the Central District of Illinois and to be served upon all counsel of record through the CM/ECF system.

                                                   */s/ Michael A. Doornweerd*
                                                   Michael A. Doornweerd